IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER BEDNARCZYK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 25-cv-xxxxxx |
| THE VILLAGE OF ORLAND HILLS and BRIAN O'NEILL, | ) |
| | ) JURY DEMANDED |
| Defendants. | ) |

### COMPLAINT

Plaintiff, JENNIFRE BEDNARCZYK, by and through her attorneys, THE COFFEY LAW OFFICE, P.C., states as and for her Complaint against Defendants, THE VILLAGE OF ORLAND HILLS and BRIAN O'NEILL, as follows:

### Nature of Case

1. Plaintiff brings this action against Defendants to recover damages proximately caused by Defendant The Village of Orland Hills' illegal discriminatory and retaliatory termination of her employment in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 *et seq.* (the "ADA"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (the "ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (hereafter "Title VII"), as well as Defendants' illegal interference, denial of her rights and related retaliatory termination of her employment in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

### Jurisdiction and Venue

2. This Court has original jurisdiction over Plaintiff's claims under 28 U.S.C.

§§ 1331, 1337, and 1343. This action is authorized and instituted pursuant to Section 703(a)(1) and 703 (k)(1)(A) of Title VII.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Defendants' illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

4. On September 14, 2024, Plaintiff timely filed a charge of illegal disability, sex, and age discrimination and retaliation against Defendant The Village of Orland Hills with the local district office of the EEOC, Charge No. 440-2024-12232.

5. On June 5, 2025, the U.S. Department of Justice issued its Notice of Right to Sue in connection with Charge No. 440-2024-12232, a copy of which is attached hereto.

6. Plaintiff has filed this Complaint within 90 days of her receipt of the DOJ Right to Sue Notice.

## The Parties

7. Plaintiff, JENNIFER BEDNARCZYK (hereafter "Jennifer"), is a 51 year-old, female individual presently residing within the geographical boundaries of this Court.

8. Defendant, The Village of Orland Hills ("The Village"), is an Illinois municipal corporation located in Cook County, Illinois, where its illegal activities described below took place.

9. At all relevant times, The Village employed in excess of 50 employees at its various facilities within this Court's geographical jurisdiction and was thus an employer and covered entity as defined under Title VII, the ADA, the ADEA and the FMLA.

2

10. Defendant BRIAN O'NEILL is an individual who at all times relevant to this Complaint was employed by The Village in the managerial position of Village Administrator.

11. At all relevant times, Defendant O'Neill had supervisory authority over Jennifer's employment, acted directly or indirectly in the interest of The Village with respect to Jennifer and the FMLA violations set forth below, and was responsible in whole or in part for the FMLA violations set forth below. Defendant O'Neill was therefore an "employer" as defined under the FMLA. See 29 U.S.C. § 2611(4)(A)(i),(ii).

## Relevant Facts

12. Jennifer started her employment with The Village in or around January 2023 in the position of Recreation Director.

13. Beginning in approximately May 2023 and continuing through to The Village's March 29, 2024 termination of her employment, Jennifer missed workdays due to debilitating symptoms of a very painful medical condition that was ultimately diagnosed as a hiatal hernia with severe acid reflux and damaged, thickening esophagus, including numerous endoscopies, some with insertion of stents as well as pain blocks, and recovery therefrom.

14. Jennifer gave her superiors advance notice of the missed days due to surgical procedures/recovery and also told them that they were due to her ongoing, medical condition.

15. The Village never requested further information from Jennifer or her health care providers or notified Jennifer that the additional days missed would be an issue or held against her in any way.

16. On March 19, 2024, Jennifer emailed The Village's Asst. Finance Director, Dora Garcia, and asked to be sent FMLA paperwork. Jennifer stated that she was not feeling any better, her kidneys were acting up, and that she was trying to get an appointment with her PCP.

17. Ms. Garcia replied a short time later stating that Defendant O'Neill, The Village's Administrator, handled such requests and that she had forwarded Jennifer's email to him.

18. Neither Defendant O'Neill nor anyone else on behalf of The Village replied to Jennifer's request for FMLA paperwork.

19. Instead, on March 29, 2024, near the end of the workday, Defendant O'Neill called Jennifer and asked her to come to The Village Hall right away. Upon arrival, he handed Jennifer a letter stating in relevant part: "Re: Elimination of Recreation Director Position . . . . After due consideration of the Village's staffing needs and fiscal realities, the Village has made the difficult decision to adjust the Village staffing, including both restructuring and the elimination of certain positions."

20. Beginning shortly before the termination of Jennifer's employment and continuing to date, the Village has significantly increased its expenditures related to Recreation Dept. staff and activities as follows:

   a. August 2023 - hired Jacque Tuma (no known disability or legally protected activity) with a title of Asst. Village Administrator at a salary greater than Jennifer's. Ms. Tuma was provided an office in the Recreation Dept. and, on information and belief, has taken over the performance of Jennifer's former Recreation Director job duties.

    b.    October 2023 - promoted Brenden Kaslewicz (male, significantly younger, no known disability or legally protected activity) from hourly Recreation staff to a newly created position of Asst. Recreation Director at an annual salary of $52k plus bonus, reporting to Tuma.

    c.    November 2023 - approved spending of approx. $18k for memberships for Jennifer, Tuma, and Jennifer's Asst. Recreation Director for four different local and national Recreation Associations. As of the date of Jennifer's termination, the memberships had not been used in any respect.

    d.    November 2023 - approved spending on new software, CivicRec Management Software, for the Recreation Dept. at a cost of nearly $19k.

    e.    February 2024 - approved a new contract for cleaning a part of the Rec Center at an annual cost of $48k.

    f.    February 2024 - approved hiring of two, part-time Assistant Recreation Supervisors at starting pay of $19 per hour.

    g.    May 2024 - hired Dan Rediger (male, significantly younger, no known disability or legally protected activity) to fill another recently vacated Asst. Recreation Director position (vacated by David Jankowsky who left in February 2024) at an annual salary of $52k.

21.    With respect to the Asst. Recreation Director position vacated by David Jankowsky in February 2024, The Village did not offer the job to Jennifer or ask her if she wanted the job or wanted to apply for it.

22.    In addition to the above, The Village treated males, significantly younger, and/or no known disability or FMLA activity workers more favorably than Jennifer

5

including retaining and then promoting Brenden Kaslewicz after he was alleged to have committed multiple acts of illegal or wrongful misconduct.

23. Effective May 1, 2025, The Village increased the annual salaries of the following personnel: Jacque Tuma $2,600 to $89,311, Dan Rediger $10,000 to $62,000, and Brendan Kaslewicz $10,000 to $63,040.

24. As of May 31, 2025, The Village's website listed open positions including Assistant Recreation Director (Maintenance), Assistant Director of Recreation, and Recreation Assistant (scheduling and Sponsors).

25. For these reasons and more to be discovered, The Village's stated reason for terminating Jennifer's employment is a pretext designed to cover its true discriminatory and retaliatory motive.

## **Count I: Disability Discrimination, Including Failure to Accommodate, in Violation of the ADA (v. Defendant The Village of Orland Hills)**

26. Jennifer restates and fully incorporates into Count I her allegations set forth in Paragraphs 1 through 25, above.

27. The ADA makes it unlawful for an employer to discriminate against a qualified individual on the basis of a disability in regard to discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment, including a failure to make reasonable accommodations to the known physical and mental limitations of an employee who is otherwise a qualified individual with a disability. See 42 U.S.C. § 12112(a) and (b).

28. At the relevant times, as described above, Jennifer was "disabled" as defined under the ADA in that she had an actual disability that substantially limited

6

several of her major bodily functions including her digestive, respiratory, and endocrine systems, as well as having a record of such impairment, and/or being incorrectly perceived by The Village as having such impairment. 42 U.S.C. §§ 12102(1), 12102(2)(A).

29. At all relevant times, Jennifer was a "qualified individual" as defined under the ADA. See 42 U.S.C. § 12111(8).

30. At all relevant times, The Village was aware of Jennifer's disability and need for reasonable accommodation related thereto.

31. As described above, in March 2024, The Village without undue hardship could have provided Jennifer with reasonable accommodation in the form of a short leave of absence from work to allow her to receive necessary medical treatment related to her disability and recover therefrom.

32. As described above, The Village failed to engage in an interactive process to identify potential accommodations and/or work adjustments that would have allowed Jennifer to continue to work.

33. As described above, in March 2024, The Village terminated Jennifer's employment because of her disability.

34. As described above, The Village has treated similarly situated, non-disabled employees more favorably than Jennifer.

35. As a direct and proximate result of The Village's illegal conduct as described above, Jennifer has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional and physical pain, mental

anguish, loss of enjoyment of life, and other non-pecuniary losses, and she is expected to incur future damages.

## Count II: Retaliation in Violation of the ADA
### (v. Defendant The Village of Orland Hills)

36. Jennifer restates and fully incorporates into Count II her allegations set forth in Paragraphs 1 through 25, above.

37. The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination prohibited by the ADA, and from coercing, intimidating, threatening or interfering with an employee's exercise of an ADA right. See 42 U.S.C. §§ 12203(a) and (b).

38. As described above, Jennifer engaged in activities protected by the ADA including requesting reasonable accommodation in the form of leave form work for a reasonable period of time to receive necessary medical treatment and recover therefrom.

39. The Village took the above-described acts and omissions against Jennifer including terminating her employment because of her ADA-protected activity in violation of the ADA.

40. As described above, The Village treated similarly situated, non-ADA-protected employees more favorably than Jennifer.

41. Additionally, The Village's March 29, 2024 job termination came on the heels of Jennfier's March 19, 2024 ADA-protected activity.

42. As a direct and proximate result of The Village's illegal retaliation as described above, Jennifer has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in

8

a sum to be proven at trial, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and she is expected to incur future damages.

### Count III: Interference with and Denial of Rights in Violation of the FMLA
### (v. All Defendants)

43. Jennifer restates and fully incorporates into Count III the allegations of Paragraphs 1 through 25, above.

44. The FMLA permits eligible employees to take 12 workweeks of leave within a 12-month period if a serious health condition ("SHC") renders them unable to perform their job function. 29 U.S.C. § 2612(a)(1)(D).

45. The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]." 29 U.S.C. § 2615(a).

46. In March 2024 and thereafter, Jennifer was eligible for FMLA leave.

47. As described above, on March 19, 2024, Jennifer notified Defendants that she needed leave from work in order to receive necessary medical treatment and recover.

48. Prior thereto, Jennifer notified Defendants that she received and was receiving continuing medical care by a health care provider related to her medical condition.

49. As described above, Defendants thereafter failed to seek certification or verification from Jennifer or her medical treaters regarding the extent of Jennifer's medical condition or need for leave from work.

50. Also as described above, Defendants failed to notify Jennifer of her FMLA

rights and instead denied her right to FMLA leave and instead terminated her employment.

51. As a direct and proximate result of Defendants' illegal interference and denials as described above, Jennifer suffered mental and physical pain and anguish, loss of enjoyment of life, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages, and she is expected to incur future damages.

52. Defendants knew that interfering and denying with Jennifer's FMLA rights and breaching its FMLA duties as described above were prohibited by the FMLA, or acted with reckless disregard to that possibility.

## Count IV: Retaliation in Violation of the FMLA
### (v. All Defendants)

53. Jennifer restates and fully incorporates into Count IV the allegations of Paragraphs 1 through 25, above.

54. The FMLA prohibits employers such as Defendants here from discriminating or retaliating against an employee for exercising or attempting to exercise his or her FMLA rights. *See* 29 CFR § 825.220(c).

55. As described above, Jennifer's March 19, 2024 request for FMLA leave was activity protected by the FMLA.

56. As described above, Defendants were well aware of Jennifer's FMLA-protected activities.

57. As also described above, Defendants failed to notify Jennifer of her FMLA rights and instead denied her right to FMLA leave and instead terminated of her employment in retaliation for her FMLA-protected activities in violation of the FMLA.

58. On information and belief, and as also described above, Defendants treated similarly situated, non-FMLA protected employees more favorably than Jennifer and did not terminate their employment.

59. As a direct and proximate result of Defendants' illegal retaliation as described above, Jennifer has suffered mental and physical pain and anguish, loss of enjoyment of life, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages, and she is expected to incur future damages.

60. Defendants knew that their retaliatory acts and omissions as described above were prohibited by the FMLA or acted with reckless disregard to that possibility.

### Count V: Age Discrimination in Violation of the ADEA
### (v. Defendant The Village of Orland Hills)

61. Jennifer restates and fully incorporates into Count V her allegations set forth in Paragraphs 1 through 25, above.

62. The ADEA makes it illegal for an employer such as The Village to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, including refusal to recall or return her to work and/or termination of her employment, because of such individual's age. See 29 U.S.C. § 623(a).

63. As described above, The Village refused to allow Jennifer a short leave of absence from work and then terminated her employment because of her age in violation of the ADEA.

64. As also descried above, The Village has treated similarly situated, substantially younger employees more favorably than Jennifer and has not terminated

11

their employment.

65. As a direct and proximate result of The Village's illegal age discrimination against Jennifer as described above, she has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### Count VI: Sex Discrimination in Violation of Title VII
### (v. Defendant The Village of Orland Hills)

66. Jennifer restates and fully incorporates into Count VI her allegations set forth in Paragraphs 1 through 25, above.

67. Title VII makes it illegal for an employer such as The Village to discriminate against an employee such as Jennifer with respect to her compensation, terms, conditions, or privileges of employment, including termination of her employment, because of her sex.

68. As described above, The Village refused to allow Jennifer a short leave of absence from work and then terminated her employment because of her sex in violation of Title VII.

69. As also described above, The Village has treated similarly situated, male employees more favorably than Jennifer and not terminated their employment.

70. As a direct and proximate result of The Village's illegal sex discrimination described above, Jennifer has he has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

**Prayer for Relief (as to all Counts)**

**WHEREFORE**, Plaintiff, JENNIFER BEDNARCZYK, respectfully requests that this Court enter judgment in her favor and against Defendants jointly and severally as follows:

    A.    Order Defendants to make JENNIFER whole by paying her appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

    B.    Order Defendants to immediately reinstate JENNIFER to her former position or one comparable thereto; or, in the alternative, order Defendants to pay JENNIFER an appropriate amount of front pay;

    C.    [Counts III and IV only] Order Defendants to pay JENNIFER an additional amount as liquidated damages equal to the sum of the amount described in Par. A, above.

    D.    [Counts I – II, and V - VI] Order Defendant The Village to pay JENNIFER compensatory damages in the maximum amount allowable under the law;

    E.    Order Defendants to pay JENNIFER'S costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

    F.  Try all issues of fact to a jury; and,

    G.  Grant such other relief as the Court deems just.

Respectfully submitted,
Plaintiff, JENNIFER BEDNARCZYK,

By: /s/ Timothy J. Coffey
Timothy J. Coffey (ARDC # 6224686)
THE COFFEY LAW OFFICE, P.C.
Attorneys for JENNIFER BEDNARCZYK
118 N. Clinton Street, Suite 125
Chicago, IL   606
(630) 326-6600
tcoffey@worker-law.com